Your Honor, second case of the morning, Fall 2010-1020, Madonna Brian v. Mercy Health System Corp. et al. and Chavez, Gantner, Sherman, and Wilcox's third-party interventions. On behalf of the third-party interviewers, point at Mr. Nathan Reyes. On behalf of Dr. Madonna Brian, Kathleen, Mr. David Fault. Both sides are ready to proceed? Yes. Then you may proceed when you're ready. May it please the Court. Good morning, Your Honors. Good morning, Counsel. My name is Nathan Reyes, and I represent the third-party intervenors in this action. I have two major topics that I would like to discuss with the Court today. The first is the narrow issue of whether the third-party intervenors have standing to intervene in the underlying lawsuit. And the second, more broader issue, is if we have standing, then what happens to the sealed court record? In order to intervene in a case, standing has to be – is described as having an enforceable or recognizable right, more than a general interest. You don't have to have a direct interest in the case, but in some way you have to be bound by what's going to happen in the case you wish to intervene in. In this case, the intervenors have three independent but equally viable bases for standing. First, we have the statutory right under the Illinois Court of Clerks Act. It gives a public right that records filed in court shall be deemed public and shall be open for inspection and copying. The second – Have you seen any cases where private individuals have – I mean, every case I've read, at least in Illinois, have been newspapers. Are there any cases where private individuals have sought to enforce this right? No, I haven't, but I would argue that the freedom of the press is no greater under the First Amendment than the freedom of the average private individual. We both have a right of court inspection. The press just gets more headlines because they have the resources, generally, to perform these kind of interventions. But the legal basis for the press's right of access is no different than a private citizen's. And that goes to the First Amendment, which is our second basis. The Illinois Supreme Court in Skolnik said that the First Amendment presumes a right of access to documents that have been historically open to the public, the rationale being you take a private dispute and you start using public resources to adjudicate that dispute, the public has a right to know how their resources are being used. What's the standard of review? For the petition to intervene, it's an abuse of discretion. However, there are ancillary issues regarding the Illinois Medical Studies Act. Those issues are going to be reviewed under the NOVO standard. So we do have two different standards of review. But for the petition to intervene itself, we analyze it under an abuse of discretion standard. The final basis for our standing is the judicial estoppel claim. And this is somewhat unique to the facts of this case. As the record bears out, this is a case between the physician suing the hospital over what she claims is a wrongful termination. In her complaint, she alleged that the hospital took away her authority as a physician to choose patients, amongst a host of other allegations. In intervenor's own litigation, under oath in her deposition, she not only testified that her complaint was true, factual, and accurate, but then she said, I had no pressure from the hospital and I had the authority. So she's taken two different positions. Now, the problem for us is that the document by which we impeach her is sealed. Don't you have a copy of the original complaint and the first amended complaint? We never have a copy of the original complaint. We've got a copy of the first amended complaint. However, what I anticipate should this case or should the intervenor's case go to trial is that we will get an objection, perhaps a motion to eliminate, stating that we're not allowed to use this complaint. Because if it's sealed and ostensibly privileged. So you have no idea whether you're going to be able to use it or not? Correct. And I anticipate an objection, as I stated earlier, from the defense saying we're not going to be able to use this. So we have this judicial estoppel claim. Wait, because it was sealed? Correct. Because it's sealed in the physician's case against the hospital, presumably because of the Illinois Medical Studies Act. I anticipate that the same objection will be raised in intervenor's own cases, that they'll say it's sealed, privileged here, so you can't use it here, because then you'll be violating. Was there ever an in-camera inspection done by the trial court in this case? It's a bit unclear. The short answer is yes, but it's a bit more complicated than that. We know from the May 6, 2008 order, the first time the court looked at this, that it was unable to make a determination. And, in fact, the words are pretty telling, the May 6, 2008 order, and this is, if you want to turn to the appendix, it's page 22. The court says, I'm unable to determine what's privileged or not. I can't do it based on statements of counsel. And yet it still sealed the record. Later on, there was a subsequent review. However, we don't know, intervenors, that is, don't really know what happened, because that's sealed. So, what we do know. No, the question is, did it happen? Yes. Not the outcome, but did the court conduct an in-camera inspection and make a determination as to what was protected and what was not? Yes. Is your argument that you're entitled to intervene in order to head off an objection at your trial? Two bases, Your Honor. We have a statutory and constitutional right, as members of the public, to intervene regardless of whether we... I understand that. Now I'm talking about your third argument. The third, yes. We have a right to intervene because we have to protect our Fifth and Fourteenth Amendment rights to a fair trial. We know that she's made inconsistent statements. That has infringed on our right to impeach her at trial, to protect the integrity of the courts. But to gain a potential winning argument at your trial, having nothing to do with this case, the outcome of this case, seems to violate the standards that were set forth in Perkinson and U.S. Steelworkers v. Bailey and some of the other cases. I would disagree, Your Honor, because we are bound by the order that was put in this case. The order that was put in this case sealed that record. The moment that was done, in addition to infringing on our statutory and constitutional rights, it also made it impossible to seek remedy for the judicial estoppel claim. The solution, the remedy to the judicial estoppel claim, is to be able to put forward evidence showing that she has taken inconsistent positions to protect the integrity of our own litigation. If we can't do that because of an order entered in this case, then it directly affects us in our own litigation. What would prevent the trial court in your case from grabbing that file, opening it up, when this objection comes, if it comes at all, it's somewhat speculative whether it will, but let's say it does come, and you say that the parts we're trying to get at aren't protected under the Studies Act or any other reason, what's to prevent the trial court, trial judge in your case, from opening up that file and allowing you to have part of it or not have part of it and conducting an in-camera look? By the time that happens at trial, it may be too late to pursue discovery as to other issues that may arise from that complaint. We know... Well, that begs the question. Sorry. Why don't you file a motion to eliminate to seek it in your case, anticipating this objection, and pin the other side down to see whether they are going to object, and then if they are, then way before trial you'll be able to know whether you have it or not. Because a public right can't be vindicated in private. Basically what it boils down to is, one, we have asked, and it's been objected to. So it's beyond the realm of hypothetical. We're in the realm of they have put down and said, no, it's not going to happen. Second, that argument, I believe, is a bit of a red herring because, remember, the issue of standing has to go to what right do we have that is being infringed upon? Even if you ignore the judicial estoppel claim and the facts of our own case, if you take it outside the realm of this is a menmal litigant seeking intervention in a hospital's dispute with a physician, we still are members of the public, and we still have rights under the Clerk of Courts Act and the First Amendment, and those rights exist regardless of what our status is as litigants in ancillary litigation. A man walking on the sidewalk right now has as much standing to walk into the courthouse door and ask for these documents. I agree with that. I was honing in on your third argument. You said you had three bases in which you were seeking to intervene. Two had to do with your constitutional rights, and basically the constitutional rights of the Clerk of Courts Act is basically the same thing. And then the third was this estoppel argument. And I was honing in just on that one. The basis for that is the estoppel claim is just like any other injury that you can petition a court for redress, and we have the right to seek discovery under that injury in order to flesh out the nature of it and correct it as necessary. That means in order to protect the integrity of our own litigation and our own Fifth and Fourteenth Amendment rights, we should be able to get access to those documents. Why don't you just try to get access to those documents in your own separate case, not in this case? We have tried. The objection is the same, that these documents are sealed. They're protected by privilege. You're not getting them. Okay. You're missing my point. Sure. You have separate cases. Discovery in those cases, in other words, seek documents from the clinic, seek documents from any other defendant. Why is it that you cannot do that? Perhaps I'm misunderstanding your question, but in our own inter-venorial litigation, the four separate cases, we have sent requests. Okay. We have asked, and the objection has come back. These are sealed. So in your case, the defense objects to your discovery based on an order in this case? Correct. Uh-huh. So that's what leaves us in this position where we can't use our own discovery, so we have to come here. Did the court rule on those objections in your separate cases? Off the top of my head, I honestly don't know the answer to that question. You just told me that they ruled on it and said that you couldn't get them because of the order in this case. They've objected, but I can't tell you right now what date or what order the court in inter-venorial litigation ruled on those objections, if they did or not. I'm happy to supplement. Wait a minute. I think you're advancing the question, but you don't know whether there's been a ruling. You've asked for the other side's objection based upon this privilege, based upon them being sealed, and the court in the inter-venor's cases, to your knowledge, either hasn't ruled or you don't know how it's ruled. Correct. Okay. The second part is now, if we have standing, what do we do with that record? The first thing I'll submit is that when you look at the brief filed by the appellees, there's a lot of question-begging going on. They assume that the privilege applies. Now, I understand that the court has conducted an in-camera inspection and has ruled upon that. However, when we look at the nature of the information we're trying to seek, remember, this intervention action was started because of issues about a doctor's authority to select patients. There's also information in there about mortality and morbidity rates. There's information in there about compensation schemes and the employment contract between the physician and the hospital. And, in fact, there's even allegations in there that the doctor made that nothing that happened was actually peer review. It was somewhat of a sham to terminate her employment. When we look at cases like Chicago Trust and Frigo v. Silvercross, the Illinois Medical Studies Act is not meant to apply to this sort of information that we have here. How do we get to this issue when the trial court hasn't even ruled on it? Now, you're telling me the trial court's ruled on it and found them to be privileged in that case. Correct. But the trial court has never ruled on your particular request because the trial court denied intervention across the board. That is correct. So, really, when we were looking at whether the trial court's denial of intervention was correct, I mean, how do we take this next step to say even if it was not what was incorrect, we're supposed to look at these documents and see what privileges apply and what statutes apply. The trial court never ruled on it. I would argue that the appellate court does have jurisdiction over that element because they have – the trial court did do an in-camera inspection. Now, admittedly, the trial court never got to that aspect of our petition. But the court does have a ruling on the record as to its judgment as to whether it's privileged or not, and I believe that argument is ripe for review and appeal. I mean, that ruling was made a long time ago with different parties, and that case has been settled a long time ago. It seems like the 30 days to appeal that ruling is long past. I don't believe that applies to us because the ongoing injury of the sealed record is just that. It's ongoing. It's as much an injury today as it was when it was first initially sealed. If you had to do everything within 30 days, what, in effect, you would be doing, I think, is putting a 30-day statute of limitation on someone's First Amendment rights, and I think that would be way too restrictive. Again, someone walking down the street would have a right to challenge those sealed pleadings regardless of when they were sealed. When you look at what's in the complaint, nothing in there is medical studies. Let's back up here a second. Are you complaining here today that you did not have the right to a hearing, so you were not allowed to intervene and to have a hearing? Or are you arguing that you got a hearing, but that the trial court ruled incorrectly? The trial court had oral argument on the petitions to intervene. However, we never got to the issue as to what was privileged or what was not. The argument focused on standing primarily, and at the end, the trial court stated that he could not determine a recognizable right. He said that we only have a general interest, but not anything more specific than that, and so denied the petitions in their entirety based on standing alone. I see I'm running out of time, Your Honors. The third part of your interview is over. Okay. You'll have an opportunity for reply. Yes. Okay. Thank you, Your Honors. Do you wish to argue? Good morning, Your Honors. Dave Faulkner appearing on behalf of Dr. LaDonna Bryant. We view this appeal as involving a single issue, and that's whether or not the court should have allowed the intervention. What may or may not have happened, if that was allowed, I don't think is before the court. It's our position that the trial court appropriately exercised its discretion and certainly cannot be said to have abused its discretion in deciding that it's not a good idea to place a medical malpractice plaintiff in the center of a credentialing lawsuit which challenges peer-reviewed conduct. And the reason it's not a good idea is because we recognize, first of all, that that's exactly what the Medical Studies Act was designed to prevent. Aren't you putting the cart before the horse, though? I mean, the issue is whether or not they have a right to access public records, and then if they do, then the court has to make a determination on your Medical Studies Act argument. I view the issue – I don't think we're putting the cart before the horse. I view the issue as do you allow them to do their discovery in the underlying medical malpractice lawsuit where they can request documents if the court finds them privileged, not give them privileged documents, but give them to what they're entitled to? Or do we decide that same issue by allowing them to intervene into a credentialing dispute where their petition specifically asks, and I quote from A-70 of the record, that they want the intervention to, quote, grant petitioner unfettered access to all discovery documents, including copies of all discovery depositions, pleadings, attachments to pleadings, and access to any and all discovery documents in the possession of the parties of the incident lawsuit. That's what their petition asks for. So your argument is they should conduct discovery in their own case and not your case. Exactly. And ask you this, though. What if the interveners didn't have cases? What if the interveners were people who were maybe thinking of having bariatric surgery and heard about this lawsuit through the grapevine and said, I'm going to go to the courthouse and do some due diligence and see what this medical center is all about, and then they come to court and say, we'd like to look at this. They don't have discovery access in another case. Would they have an enforceable right to come to court and ask, not to view the documents. I'm not talking about do they have an enforceable right to violate the Medical Studies Act. I'm not talking about that. I'm talking about taking a baby step first. Do they have an enforceable right to come to the court and say, judge, can I look at these documents, and then have the court decide whether they can or can't? Not where the court has sealed the record. And the court has sealed the record based on the Medical Studies Act. The individual that you talk about is not a member of the press. The court has determined that this is privileged information. If you accept the argument that any person walking in the state of Illinois has the same standing as does the press, then you're saying any person could come in and look at this information that the judge, on the face of the pleadings, if you look at the amended complaints, and after inspection, 200 documents, determined that interwoven in that complaint is peer-reviewed processing. So if the press came in, then the court would have to at least allow them to intervene for the purpose of deciding what, if any, of these documents that you have. As I read Skolnick and Kelly, it says that they allowed the press in basically because there was a press issue, in other words, our fourth estate, and also that there would be no other opportunity to have access to the information. Our trial judge knew that this situation was very different. In this situation, there is access to the information and an opportunity to have it reviewed. And if your Med-Mal claim, if you're hypothetical, that person were to come in and say, I want to get this stuff, if you look at the Zagana or Zagara case that they ask you to consider as additional authority, I think their recourse is to file their action. Or their recourse would be to try and get discovery in preparation of a lawsuit as the rules allow for. And that way they could get to what they're entitled to. But no one is entitled, I don't think under the Medical Studies Act, to step in and say, I want to be in the hub of a credentialing dispute. Justice Burkett, I don't know if I fully answered your question. You said, where are we on standing? As I'm listening to them, they essentially sit here and they say, well, we have a statutory right and a First Amendment right to be here. When I look at the cases, they say only to documents that historically have been made available. And our courts have recognized privilege in a broad variety of areas. These are not documents that are historically available. They say that we think that we might have a very good impeachment or judicial estoppel argument. I fully disagree, and I would love to argue the merits of the underlying lawsuits. Never did Dr. Bryant say that these people were not candidates, even though three times in their brief they claim that. But I advise you to look at the record. Never did she say they were not candidates. I don't doubt that any privilege you deal with, people could look at you and say, I may be able to do some wonderful things with that privilege information. A criminal prosecutor could do some wonderful things if he or she could get access to the communication between the criminal defendant and his public defender. Or access to what's said in the marital bed between husband and wife. Or access to what's said to the minister and priest in the confessional. But we recognize that the fact that you think that may be relevant, you may have some use for it, doesn't waive the privilege. And those privileges that I just mentioned are all privileges that are owned by individuals and can be waived by them. And this privilege is even stronger. You're suggesting that the Medical Studies Act privilege is stronger or as strong or parallel with attorney-client? I would say it's even stronger, Your Honor. And this is why I say it. It's a statutory privilege, not a common law privilege. It's statutory. It's not owned by an individual. It can't be waived. And I'll tell you, it's a privilege that should get respect. And I think a little bit more than it does. I've been around this business for 20-some years. I've seen effective QA programs be placed in the hospitals. You know how they did that? They put a physician talking to each of the committees, and they had me standing next to him saying, and, yes, if you report problems, it's privileged under the Illinois Medical Studies Act. I have seen cases where people have said before they file a report, before they start the process, is this going to be privileged? And we're able to say, yes, under the Medical Studies Act it is. And this goes forward. And we know it's strong because it's owned by the state of Illinois. The statute says it cannot be waived. And it's a criminal misdemeanor to disclose information. Well, not if it's pursuant to a valid court order. It's not. Well. If you're ordered to furnish the information under a valid court order, it is not a violation of the act. Would you agree? I would certainly appeal it, depending on the order. Have you read Malarski v. Shee? Malarski? It's a case out of this court. Producing records pursuant to a valid court order under the act is not a violation of the act? I was not familiar with that, Your Honor. Here's the site. But I would point out to the court that what the Medical Studies Act contemplates and asks the court in deciding whether to issue court orders to release Medical Studies Act material, the legislature says we understand that to get candid review, we need to give this privilege. Counsel, isn't this a two-step process? Do you have the right to come into court and ask for the records? And then secondarily, if you're given the right to a hearing to even ask to get to see impounded documents, then and only then does the Medical Studies Act come into play. Question number one is do you have the right? And in this circumstance, the answer is no. Because? Because, first of all, you are not the press. You don't have the kind of interest that is required under the statute. You don't need the intervention by right statute. Let's assume for the sake of argument they have the right to intervene. Do you think it's a two-step process? A two-step process, yes. In other words, if you have the right to intervene, does that mean you get the records? Or do you have to show that you are otherwise entitled to them? I think you would have to establish that you're entitled. But the intervention request that they asked, which the court denied, was they said we wish to intervene and basically get a copy of each and every document that's there. Right. And then your response to that is the Medical Studies Act? Well, you don't have a concrete enough interest. If you look at, they say that they have a right under the First Amendment and a statutory right. Could we move to the second issue? Okay. The second issue is do they have a right to the Medical Studies Act materials, is that what you're asking? Yes. And the short answer is they don't have a right to Medical Studies Act materials. Because of the issues that you've just outlined. Exactly. It's statutory, it can't be waived, and it is an exceptionally strong, impenetrable, basically, privilege. And the trial court is sitting there and they're saying, do I allow them to intervene where they have access to all this material and get to read it and get to see it? Or does it make more sense for me to recognize that they have an underlying pending action and rather than have them have access to this information, which the Medical Studies Act definitively said they should not have, have them request their normal discovery? Well, if it's not privileged and they have access to it, they can go in the courthouse and copy the files they've paid for it, correct? Yeah. Let me ask you this. The trial court looked at it and the trial court said this stuff is privileged. What if the trial court was wrong? Who would use that? In this particular case, the court recognized that in the underlying met-mal action, the same sitting judge, by the way, would be able to request those and have a challenge to them. But look, what if it's a different judge? What if it's a different county? What if it's the federal court? What if it's a different state? I mean, wouldn't it be better to have the judge who said these are privileged make the determination in this setting as to what goes out and what stays in, if anything, as opposed to sending the file to Montana and having some judge in Montana decide under the underlying Medical Studies Act what the claims in Montana get? In this case, that's not the circumstance that pays the judge. I know that. But you're asking if it's better. And I guess what I'm saying is can anybody step in? And under your argument, anybody could step in and challenge that. And I don't think that the intervenor statute allows that or that the Perkinson case or the facts of that allows it at all. It simply doesn't say that you can have that intervention in that particular case. And they've implied that they're going to be bound by the protective order, that basically what's going to happen is people will wave the court ceiling in the medical malpractice action and say, aha, you're not entitled to it. And no, that is not so. The ceiling only applies to that court file. In business litigation cases that you encounter all the time, there are cases where, say, Motorola is sued over a cell phone and suit number A in a protective order or a ceiling is entered, and then they're sued in another suit, suit B. They're not bound by that order in suit A. They're implying that it is, but they're not. When this court looks at the medical malpractice actions and looks for the request for materials, it will determine whether or not the medical studies act applies. And that's the objection that we've raised in the trial courts in the medical malpractice actions. And, I mean, I think you're familiar with the fact that a protective order or a ceiling from case A will not have an effect in case B. I mean, I dug up a federal case that said that, the Four Pillars case, 9th Circuit, 308 F. Second, 1075. But it's not binding. And so the question becomes, as the court looks at all these circumstances, does it make sense to have this intervention? No. They don't have an intervention by right. I don't even think the only way they could even potentially fit under permissive intervention is to say maybe there's a common fact. And the common fact that push is candidacy for surgery. And they misrepresent what she said about that.  I mean, I've got it for you if you want, but every one of these patients met the candidacy for surgery, the judicial estoppel argument. In fact, in one of the cases, they didn't even ask about whether or why the patient was a candidate for surgery. Bottom line then, these potential interveners file a request for discovery to basically get the contents of, not the contents of this file, but the same information from another place. Your position is that a defense to that is not that it was already sealed in another case. Right. My defense would be it's privileged under the Medical Studies Act. And that's what I've asserted. Now, there might be some persuasive effect to, but there's no binding effect. And to have a right to intervene, you have to be bound. And when you start comparing the interest that they say they have here into what was deemed to be an insufficient interest in Perkinson, namely that an employer could be subject to a domestic case. Let's say this. So you keep going back to that, that there's a difference between the media and a private individual. Let's say that Suntimes wants to do an expose on this clinic. And they come in and go into this file and say, we want those records. Would that change your position? Well, I think that Suntimes might have a different footing. From what I understand, it was either under Kelly or under Skolnick. The reason that the intervention was allowed, I think it was Kelly, was a recognition that, in essence, you're dealing with the press. And also the concern that there would never be a review of that. Anything that these plaintiffs want, they have lawsuits pending with the hospital. They can request those documents, and anything they're entitled to, they can get. And anything they're entitled to can be reviewed. And so I think that's the difference between. Is it your position that the press would get the documents or that the press would be entitled to a hearing? And they would have sort of, for the sake of a better way to describe it, they would have immediate standing to then challenge the protective order. I think Kelly implies that they have enough of an interest to be heard. And would they automatically get the documents? But they would still lose based on the medical side. I would think so, yes. Because what the court did in the credentialing action was it examined the pleadings. And I think you have the first amended complaint. On its face, you can tell they're talking about peer review and what was done in committees. And also the court received, I think, about 220 pages of documents from the examinant in camera, confirmed that the act applied, and then issued its 4-2-2009 order, which is C-436 in the record, where it struck about 30 paragraphs and five exhibits. Any other questions I can answer for you, please? Sure. Thank you. Okay. Thank you very much. May it please the Court. Your Honors, two brief issues on rebuttal. A lot of discussion about difference between the press and private citizen. You look at the Illinois Supreme Court case in Skolnick, and that was a dispute between two private citizens, two attorneys, in fact. It didn't matter that the press wasn't involved. The Skolnick court still said that the right of access was present. And the counterclaim in question, no matter how defamatory it was and insulting to the professional reputation of a lawyer, still had to be public. And you're not going to find any U.S. Supreme Court case interpreting the First Amendment to give a higher level of protection to the press than the private citizen. Again, the legal basis is the same. Second, Skolnick also says the complaints must be public, except perhaps, and I like the word perhaps, in case of national security. Court did a review. Thirty paragraphs were stricken. This is a 321-paragraph complaint. What happened to the other 291 paragraphs that can't be disclosed? Under strict scrutiny analysis, narrowly tailored to serve a compelling state interest, why aren't the other 291 disclosed, even assuming that Illinois Medical Studies Act precludes disclosure? Finally, defense. That's the point, that Illinois Medical Studies Act would preclude the disclosure of the 291 paragraphs. That's presumably what happened here. The court struck the 30 paragraphs due to the act. I'm sorry, the other way around. So my question is, why aren't the 291 paragraphs that weren't deemed to be privileged, why weren't those disclosed? I don't think you asked for that in your petition, did you? Well, we asked for the entire record to be unsealed. And part of our analysis in our brief is the strict scrutiny analysis, which is, let's say the Medical Studies Act is a sufficient defense against disclosure, then the narrowly tailored result to enforce that privilege has to be strike what's bad, disclose the rest. Illinois Supreme Court has defined narrowly tailored as the least restrictive means of obtaining your goal. The least restrictive means would have to be strike the bad, disclose the rest. Finally, this is, as much as the previous argument was, this is at core standing. And, yeah, there can be a lot of dispute over judicial estoppel. It's a very unique, new approach to it. But I haven't heard anything stating that our First Amendment or Clerk of Courts Act rights are in any way lesser than anyone else or the press. So for these reasons, we request that this court unseal, reverse the lower court's determination that we have standing to intervene. Is there no further? No, if we do that, if we just say you have standing, then you've earned yourself the right to a hearing. That is correct. So that's all you're asking for. Well, like I said earlier. Yes or no. What is your remedy? You just a minute ago said we are asking this court to reverse the finding of no standing. So tell me exactly what you're asking for. I would ask that you reverse the court order stating that we don't have standing. I would argue that this court has jurisdiction to adjudicate the issues as to what is privileged and what is not. Because the trial court below us has made a determination of that fact. So you absolutely agree there was an in-camera inspection, the trial court made a determination that these documents, this is under the privilege. Correct. There was both. An opportunity for you to be heard and the trial court made a decision that this is privileged. Not on our intervention action, but prior to our petitions intervened. In our specific petitions intervened, all that happened was a denial of standing. So if I see where you're going with this, we would be asking for a reversal of that decision. We have standing. We get our hearing to go tell the court, this is why this is privileged. This is why this isn't privileged. And the court can unseal or seal as necessary. The trial court. Correct. Thank you very much. Thank you.